# THE UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR59 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **<u>ORDER</u>** |
| | ) | |
| JAMILL MCDONALD, | ) | |
| | ) | (Resolves Doc. 18) |
| Defendant. | ) | |

This matter comes before the Court on Defendant Jamill McDonald's motion to suppress (Doc. 18). The Government has opposed the motion, and the Court conducted an evidentiary hearing on July 1, 2024. Upon review, the motion is DENIED.

The underlying facts of the search at issue are undisputed. On October 18, 2023, McDonald called the Mayfield Heights Police Department because he viewed a person on Ring doorbell camera attempting to break into his apartment. Officers responded, observed damage to the door of the apartment, but did not find an individual actively breaking into the residence. A short time later, McDonald arrived while officers were still at the scene. At that time, McDonald gave consent to the officers to perform a protective sweep of the apartment to ensure that the burglar had not gained entry and remained inside. During the protective sweep, officers observed a large brick-shaped object wrapped in cellophane on a shelf in an open closet. Officers immediately identified the object as likely narcotics and seized the item. After that, officers then obtained a search warrant. A full search of the apartment revealed a small bag of

8.46 grams of cocaine, another two bags containing .48 grams of cocaine and 1.49 grams of fentanyl, and three bags of blue pills that were 310.48 grams of fentanyl

McDonald contends that the seizure of what ultimately turned out to be roughly a kilogram of cocaine and the subsequent search of his apartment should be suppressed. The Court finds no merit in this argument.

"Warrantless seizures presumptively violate the Fourth Amendment, but under certain circumstances an officer may seize evidence in plain view without a warrant." *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013) (citing *Arizona v. Hicks*, 480 U.S. 321, 326–27, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)). "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236 (1968) (citations omitted). Under the plain view doctrine, four factors must be satisfied: "(1) the item seized must be in plain view, (2) the item's incriminating character must be immediately apparent, (3) the officer must lawfully be in the place from where the item can be plainly seen, and (4) the officer must have a lawful right of access to the item." *Mathis*, 738 F.3d at 732 (citing *Horton v. California*, 496 U.S. 128, 136–37, (1990)).

McDonald does not appear to challenge prong one of the doctrine. As the item was on a shelf in an open closet, it is properly found to be in plain view. McDonald, however, challenges whether the item's incriminating nature was readily apparent. In that regard, Sergeant William Dvorak testified that based on his training and experience, the size and the nature of the packaging of the object made it readily apparent that it was narcotics. Dvorak also sought independent confirmation of his observation by having two different officers in the apartment view the object. Both officers similarly concluded that the object was instantly recognizable as

packaged narcotics. Accordingly, the item's incriminating nature was immediately apparent. *See, e.g., State v. Castellon*, 151 N.C. App. 675, 683, 566 S.E.2d 696, 701 (2002) (upholding the seizure of a Saran-wrapped package when officers "recognized immediately that they contained contraband" because they knew from their training and experience that narcotics are "commonly packaged with [S]aran wrap").

While not clearly articulated, McDonald appears to challenge whether the officers were lawfully present whether the item was located. The Court finds no merit to this challenge. It is undisputed that McDonald consented to a protective sweep of his property. Thus, officers lawfully entered the apartment. McDonald appears to take issue with the fact that Dvorak was the second officer to enter the bedroom where the brick was ultimately seen and seized. McDonald suggests that officers were no longer engaged in a protective sweep at the time the object was discovered. The record refutes this assertion. Dvorak explained that the first entry to the bedroom was simply a cursory view to determine if an intruder was an immediate danger to the officers. A second entry was made to check in all locations, the closet included, where an intruder could be hiding. As such, the record reflects the item was located and seized while officers were lawfully engaged in a consensual protective sweep of the house.

Finally, McDonald appears to take issue with the fact the suspected narcotics were seized, removed from the apartment, and field tested prior to a warrant being obtained. McDonald seems to suggest that once the apartment was secured, the suspected narcotics should have remained while a warrant was obtained. McDonald, however, can demonstrate no prejudice from the removal of the drugs from his home. As the nature of the object made its incriminating nature readily apparent, officers were within their authority to immediately seize the item. Moreover, even if the item had not been seized and tested, officers had sufficient

information to obtain a warrant. As such, the item's discovery and its subsequent testing were inevitable.

Based upon the above, McDonald's motion to suppress is DENIED.

IT IS SO ORDERED.


Dated: July 17, 2024                         /s/ Judge John R. Adams
                                             JUDGE JOHN R. ADAMS
                                             UNITED STATES DISTRICT COURT