UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24CR59 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | ORDER |
| JAMILL H. MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Jamill McDonald's *pro se* motions for new trial. Docs. 74 and 78. The motions are DENIED.

**I.  Legal Standard**

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The rule "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuntar*, 881 F.2d 466, 470 (7th Cir. 1989). However, "it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

**II.  Analysis**

1.  Timeliness

Initially, the Government contends that McDonald's motions are both untimely filed. Rule 33(b)(2) provides that "[a]ny motion for a new trial grounded on any reason other than newly

discovered evidence must be filed within 14 days after the verdict or finding of guilty." A jury returned its guilty verdicts against McDonald on November 19, 2024. His motions were docketed with this Court on December 12, 2024 and December 17, 2024. While McDonald is entitled to the mailbox rule, his filings indicate that they were postmarked on December 9, 2024 and December 13, 2024. Additionally, the Government has demonstrated that the facility housing McDonald sends out prisoner mail daily. As such, the earliest date on which McDonald could have placed either of his motions in the mail system would have been December 8, 2024. Based on his jury verdict, McDonald's motion deadline was December 3, 2024. As such, his motions are untimely.

McDonald attempts to avoid this result by contending that his motions are based upon new evidence. However, the evidence he relies upon is testimony from his trial. Accordingly, the motions could properly be denied as untimely. Given McDonald's pro se status and the nature of his arguments, the Court will proceed to review the merits of his motions as well.

2. <u>Suppression</u>

A vast majority of both McDonald's motions focus upon his belief that this Court erroneously denied his motion to suppress. McDonald contends that testimony elicited at trial supports his view that officers engaged in an improper "secondary sweep" of his apartment. The Court disagrees.

At the outset, the Court notes that McDonald makes claims regarding the testimony at his trial, but he has not ordered a transcript. As such, it appears that McDonald's assertions are based on nothing more than his own characterization of certain testimony. Regardless, his arguments have no merit.

McDonald asserts that testimony at trial revealed that officers performed an impermissible

"secondary sweep" of his apartment. The record does not support this contention. First, there is no dispute that McDonald contacted officers to report an attempted break-in at his apartment. Further, there is no dispute that McDonald consented to officers performing a protective sweep of his apartment to determine whether the intruder had entered and remained in the apartment.

"The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect[.]" *Id.* Testimony revealed that McDonald consented to officers determining whether a person was inside his apartment. Officers testified that they did a very quick search by essentially looking into each room to see if a person was in plain view. Officers then performed a more thorough search by returning to these rooms and opening closets or searching under things where a suspect could be hidden. This search was well within the expressed object of McDonald's consent – determining whether an intruder was within the apartment. Contrary to McDonald's contention, the facts here do not align with *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003). In that matter, officers performed two separate, subsequent searches of an apartment wholly unrelated to the purpose of their first search. *Id.* at 541-42. Here, the officers conducted one continuous search to fulfill the express purpose that McDonald gave them when he consented. Thus, his arguments fail.

Similarly, McDonald appears to take issue with the fact that the Court did not separately analyze his argument that officers improperly seized apparent drugs while awaiting a formal seizure warrant. However, the Court previously determined that the drugs were found in plain view by officers who where legally in that part of the apartment pursuant to consent. Accordingly, even if moving those drugs were somehow found to be a violation of the Fourth Amendment, they

would have remained admissible.  The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). If the evidence can be discovered through lawful means, "then the deterrence rationale has so little basis that the evidence should be received." *Id*.  Here, officers properly obtained a warrant based upon lawfully gathered probable cause.  As such, the drug package would have been discovered regardless of whether it was improperly removed from the apartment prior to formally obtaining a warrant.

In his final argument with respect to suppression, McDonald appears to argue that his due process rights were violated in some manner because the Court "advocated for the Government." The record is clear that the Court did nothing more than apply the law to McDonald's facts after an evidentiary hearing.  Accordingly, there is no factual basis to support his assertion that the Court acted improperly in any manner.

        3. <u>Unlawful Arrest</u>

McDonald next argues that his arrest was improper because officers had not obtained an arrest warrant.  Exceptions to the warrant requirement have been created where the gravity of the offense justifies an immediate arrest without a warrant, where a crime has been committed in the presence of the officer, or where exigent circumstances make it impractical for law enforcement officers to delay the arrest until they can obtain a warrant. *See United States v. Watson*, 423 U.S. 411 (1976).  McDonald's facts demonstrate that officers had probable cause to believe he had committed an offense in their presence – the possession of the drugs found in his apartment.   Thus, he has not basis to assert that his arrest was improper.

4. Indictment

McDonald next argues that his indictment was somehow flawed. For example, he contends that he was charged with possession with intent to distribute drugs "on or about October 18, 2023." McDonald then argues that the search was not obtained until after midnight, in the early morning hours of October 19th, 2023. Contrary to McDonald's argument, this alleged discrepancy does not invalidate his indictment, nor does it demonstrate that the search of his apartment was somehow unlawful. As the Court properly instructed the jury, the Government need not prove the *exact* date in the indictment. Moreover, officer testimony in fact revealed that the drugs were first discovered in McDonald's home during the protective sweep that occurred prior to midnight on October 18, 2023. As such, the evidence supported that McDonald committed his offenses on the day alleged by the indictment. As a result, this argument also lacks merit.

5. Interrogation Video

McDonald's argument regarding this video is contradictory. At one point, he claims that the Government "never mentioned" the video's existence prior to its use at trial. Later, he asserts that the Government "provided only a redacted interrogation video." Throughout these proceedings, the Court took steps to ensure that McDonald had access to all the evidence to be used against him and the technology necessary to review that information. There is nothing in the record to suggest that evidence was withheld. Rather, it appears that because other body camera footage was lost to a cyberattack, McDonald is skeptical about the survival of this footage. McDonald was able to cross-examine witnesses about this fact and demonstrate his skepticism to a jury. Accordingly, this provides no basis to order a new trial.

6. Exculpatory and Impeachment Evidence

McDonald next complains that he requested exculpatory and impeachment evidence and receiving nothing from the Government.  McDonald, however, has failed to identify any evidence in existence that is either exculpatory or impeachment evidence.  As there appears to be no evidence to provide, McDonald has demonstrated no error.

7. <u>Failure to Preserve Evidence</u>

Next, McDonald asserts that the Government's failure to preserve all of the body camera footage violated his rights.  Where the government fails to preserve evidence "whose exculpatory value is indeterminate or only 'potentially useful' to defendant ..., the defendant must show:

(1) that the government acted in bad faith in failing to preserve the evidence;

(2) that the exculpatory value of the evidence was apparent before its destruction; and

(3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (internal citations omitted); *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001); *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002).   The sole evidence presented during trial testimony indicated that certain body camera footage was lost when the police department at issue was subject to a cyberattack.  McDonald has offered no evidence to suggest any other factor contributed to the loss of this evidence.  As such, he cannot demonstrate any bad faith by the Government.  Similarly, he cannot demonstrate that there was any exculpatory evidence contained in any of the lost footage.  This argument, therefore, does not support ordering a new trial.

8. <u>Judicial Misconduct</u>

McDonald's second motion, Doc. 78, begins with an argument alleging some form of judicial misconduct.  McDonald's argument focuses upon his belief that his suppression motion

should have been granted. He alleges that by erring in this decision, the undersigned committed judicial misconduct. As detailed thoroughly above and in the Court's written order on the motion to suppress, McDonald did not state a valid basis to suppress evidence. Accordingly, he cannot state a valid claim for judicial misconduct related to that ruling.

9. Fair Cross Section

McDonald next argues that there were too few minorities in his jury pool thereby violating his rights. Ever since *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Supreme Court has held that the Sixth Amendment regulates how the government may assemble the juries that will decide on the guilt or innocence of defendants. *See id*. at 528. This jury-assembly process must ensure that the broad pool of potential jurors (often referred to as the jury "venire") represents "a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979).

The Supreme Court has adopted a burden-shifting framework to enforce this right. *See* id. at 367–68. Defendants must first establish a three-part prima facie case. *See Berghuis v. Smith*, 559 U.S. 314, 327 (2010). They must identify "a 'distinctive' group in the [broader] community." *Duren*, 439 U.S. at 364. They then must show that the "representation" of this group in the jury pool does not fairly and reasonably match the representation of the group in that community. *Id*. They lastly must prove that the jury-assembly process creates the complained-of "underrepresentation" by systematically excluding the group from jury pools. *Id*. The Sixth Circuit has previously rejected a claim that this District's Jury Selection Plan runs afoul of the Sixth Amendment. *See United States v. Watkins*, 691 F.3d 841, 850-51 (6th Cir. 2012). Accordingly, McDonald's claim fails.

10. Balance of the motions

The remainder of McDonald's motions appear to contend that the Court demonstrated bias

or prejudice because it denied many of his motions.  However, McDonald has made no showing that any of those orders were legally or factually incorrect.  As such, they cannot serve as a basis to support his claim that he was somehow treated unfairly.

Based upon the above, McDonald's motions for new trial are DENIED.

IT IS SO ORDERED.


January 22, 2025  /s/ John R. Adams
Dated  JUDGE JOHN R. ADAMS
United States District Judge